Julian E. Gabiola – WSB No. 7-5085
HAWLEY TROXELL ENNIS & HAWLEY LLP
412 West Center Street
Pocatello, ID 83204
Telephone (208) 233-2001
Facsimile (208) 232-0150
jgabiola@hawleytroxell.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| RAYMOND CALDWELL,<br><br>Plaintiff,<br><br>vs.<br><br>TETON CLUB OWNERS ASS'N., INC.;<br>RAINTREE RESORTS MGMT. CO., LLC'<br>and JOHN DOES 1-10<br><br>Defendants. | Civil No. 20-CV-00064-NDF<br><br>**PROPOSED FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW** |

COME NOW Defendants, by and through undersigned counsel, and submit this

Proposed Findings of Fact and Conclusions of Law.

## I.    FINDINGS OF FACTS

1.    The Teton Club Owners Association, Inc., ("Teton Club") is the owner

and operator of a condominium complex located in Teton Village, Wyoming.

2.    Raintree Resorts Management Co., LLC, is a timeshare company.  Aside

from owning some weeks of timeshares (along with about 400 other members), Raintree Resorts

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 1**

48155.0009.13648733.1

Management Co. ("Raintree Resorts") does not own or operate the Teton Club, including the spa facilities and hot tub area.  Raintree Resorts does not provide any training related to the hot tub area or about hotel or resort management to any Teton Club employees.

3.     Plaintiff Raymond Caldwell is a citizen of Alaska and in the winter of 2016 and spring of 2017 was residing in Teton Village, Wyoming.

4.     Mr. Caldwell was paying rent and living with his girlfriend in an employee housing unit at the Teton Club Resort.

5.     The Teton Club required Caldwell to sign a lease agreement, but although such a lease was returned with Caldwell's information and purported signature, he did not sign it.

6.     The spa area of the Teton Club that contains the hot tubs is designated in the Declaration of Condominium as a "limited common element—club," which is an element that is for the use of the owners of club residences.

7.     Mr. Caldwell was not an owner of a club residence.

8.     The Executive Board of the Teton Club may permit others "by contract, lease, license, membership agreement, or other relationship to use … the spa..."  The Executive Board had not permitted Mr. Caldwell to use the spa.

9.     Consistent with the Declaration of Condominium, according to the lease agreement applicable to employee housing, non-employee residents of employee housing were not allowed to use the fitness facilities or hot tubs without the express permission of the general manager.

10.     Mr. Caldwell was not employed by Teton Club.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 2**

11.     Steve Michel; the general manager, neither knew that Mr. Caldwell was using the spa, nor gave him permission to do so.  Mr. Caldwell also never asked Mr. Michel for permission to use the spa facilities.

12.     There is only one route to get to the hot tubs, which is through the fitness center and through a locking door to the outdoor hot tub area.

13.     On the desk in the fitness center, where patrons would get towels for the spa, a sign was posted which read "**Use of Fitness Center & Hot Tubs** Club Owners and other authorized users of the Fitness Center and Hot Tubs use such facilities and equipment at their own risk…Persons using these facilities do so at their own risk."  The only entrance or exit to the hot tubs was through the fitness center.

14.     Another sign was posted up by the hot tubs, indicating that patrons use the hot tubs at their own risk.

15.     Mr. Caldwell did not have permission to use the spa facilities.

16.     On or about January 6, 2017, Mr. Caldwell accessed the hot tub facilities at the Teton Club without the knowledge or permission of the general manager.

17.     Mr. Caldwell had used the hot tubs many times before and was familiar with the area and testified that he was aware snow and ice were often present.

18.     When Mr. Caldwell walked to the hot tub, he observed snow and ice on the stairs leading to the hot tub.  He also observed ice on the landing leading to the hot tub.  He was not wearing any footwear.  Mr. Caldwell was aware that Teton Club had an underground heating system in the stairs and walkways in the hot tub area.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3**

19.     According to Mr. Caldwell, the conditions were essentially the same as illustrated by the photographs he took in February 2017, which show snow or ice in various areas from the entrance to the spa area, and up the two flights of stairs to the hot tub he used.

20.     Although it was after dark, there were lights in the area, and Mr. Caldwell was able to see the snow and ice on the stairs and landing, as well as towels and bathrobes belonging to other hot tub users some distance away.

21.     Mr. Caldwell was in the hot tub for about "half an hour, maybe a little more. Not much." After getting out of the hot tub, Mr. Caldwell "took a step onto the stairs, the stop [sic] stair, and [] had just gotten ahold of the handrail when [his] feet shot out completely out from underneath [him] and [he] went down those stairs with [his] left hand onto the handrail."

22.     Although Mr. Caldwell alleges that after the fall he saw different ice on the stair than he noticed thirty minutes earlier, there is no evidence as to the source of this ice or whether it contributed to Mr. Caldwell's fall.

23.     Mr. Caldwell claims he sustained injuries in the fall, including sore wrists, a sore left shoulder, and broken ribs. Mr. Caldwell sought medical care six weeks later on February 20, 2017.

24.     Mr. Caldwell alleges that he has required and will require in the future, additional medical care due to the fall he sustained on January 6, 2017.

## II.     CONCLUSIONS OF LAW

1.     Mr. Caldwell was not authorized to use the spa facilities on the night of January 6, 2017. The spa facilities were reserved for Teton Club owners and their guests. Mr. Caldwell was not a club owner or a guest.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4**

2.      Although the Executive Board or the general manager could also grant access to the spa, there is no evidence that Mr. Caldwell had requested or received that permission, or that Teton Club was aware that he was using the spa facilities.

3.      Mr. Caldwell had not entered into any agreement with the Teton Club to extend the use of the spa facilities to him, and the right to use the spa facilities cannot be implied from the mere payment of rent for living quarters. There is no indication that the spa facilities, which are not necessary for the use of the employee housing were included in the premises rented. Unlike sidewalks or parking areas, which are necessary for ingress and egress, the spa can only be accessed from the fitness area.

4.      In addition, because there is no evidence that the Teton Club was aware of his use of the spa area Mr. Caldwell cannot show that he had an implied license. *Kendrick v. Healy*, 27 Wyo. 123, 192 P. 601, 610 (1920) ("the owner of land, ***with full knowledge of the facts***, tacitly permit[ed] [Plaintiff] repeatedly to do acts upon the land, [such that] the license may be implied from his failure to object.") (emphasis added). Such an implied license has generally only been held to exist when some physical item was located on the property and conspicuously present. *See, e.g., Sammons v. American Auto Ass'n.*, 912 P.2d 1103, 1105 (Wyo. 1996); *Coumas v. Transcontinental Garage*, 68 Wyo. 99, 23o P.2d 748, 758 (1951). In these cases, the nature and extent of the permission granted were at issue, not the existence of the permission. Here, Mr. Caldwell's presence among other users for perhaps 30 minutes at a time is not so conspicuous as to provide notice to Teton Club of his use or to imply tacit permission, particularly in light of the lack of evidence that Teton Club was aware of his use.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 5**

5.     Because Mr. Caldwell was not an authorized user of the spa facilities, he was a trespasser to whom Defendants owed no duty of care. *Franks v. Indep. Prod. Co.*, 2004 WY 97, ¶ 16, 96 P.3d 484, 492 (Wyo. 2004).

6.     In addition or in the alternative, Teton Club owed no duty of care to Mr. Caldwell to remove a natural accumulation of snow or ice that was open and obvious. *LeGrande v. Misner*, 490 P.2d 1252, 1255 (Wyo. 1971) (emphasis added) (granting summary judgment to defendants). "The conditions created by the elements, such as the forming of ice and falling of snow, are universally known and ***there is no liability where the danger is obvious or is as well known to the plaintiff as the property owner.*** There was such a condition here but even more to be expected because of its location and use." *Bluejacket v. Carney*, 550 P.2d 494, 497 (Wyo. 1976) (emphasis added). "Knowledge of danger on the part of plaintiff obviated any need for warning signs. ***It would be absurd to put up a sign saying, 'Slippery, Walk Carefully' or 'Danger-Ice,' when it tells the plaintiff something he is bound to know because of its presence which he can see and realize just as well through his own active senses***, without prompting. There was no hidden danger but only a well-known prevailing condition." *Id.* at 498 (internal citations omitted) (emphasis added).

7.     It is undisputed that Mr. Caldwell was aware that ice and snow were present in the area generally and at the time of the accident. Mr. Caldwell had used the hot tubs before January 2017 "many, many times," and testified that on those occasions there was snow or ice on the steps leading to the hot tubs. He was aware that snow and ice were present in the area on the evening of January 6, 2017 when he approached the hot tub, and personally observed the same on his way up the stairs. "Even if the plaintiff is unaware of the ice or snow he happens to slip on, he may be charged with knowledge that ice or snow is a common hazard in the winter,

one which he must consistently guard against." *Eiselein v. K-Mart, Inc.*, 868 P.2d 893, 898 (Wyo. 1994).

8.      As was the case in *LeGrande*, Mr. Caldwell had more accurate and timely knowledge of the condition of the stairs than Teton Club. Mr. Caldwell was fully aware of the presence of ice on the stairway and landing leading to the hot tub from prior use "many, many times" and was specifically aware of its presence from his crossing the same area on his way to the hot tub on the night of the fall.

9.      In addition, although Plaintiff was barefoot at the time of the fall, there is no evidence that Plaintiff slipped on the ice Plaintiff later observed on the stair. There is no testimony as to what caused his fall. Without evidence of what caused his fall, there is no basis to impose any liability on the landowner for negligence. *LeGrande*, 490 P.2d at 1254.

10.     Although Mr. Caldwell urges that the ice was not a natural accumulation, there is no admissible evidence to support that claim. To prove that the ice was not a natural accumulation, Mr. Caldwell must show (1) that the Teton Club created or aggravated the hazard, (2) that the Teton Club knew or should have known of the hazard, and (3) that the hazardous condition was substantially more dangerous than it would have been in its natural state. *Pullman v. Outzen*, 924 P.2d 416, 418 (Wyo. 1996).

11.     Mr. Caldwell has not met his burden of proof.

12.     Assuming arguendo that the ice Mr. Caldwell observed after his fall was different than he observed when he climbed the stairs, there is no evidence that it was a new deposit of ice, rather than simply previously unnoticed patch of ice. No one, including Mr. Caldwell, saw any water deposited on the stair in the half hour that Mr. Caldwell was in the hot tub or identified the source of any water during that time. Speculation that the hot tub may have

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 7**

leaked or that other bathers (who no one saw leave, but were known to have towels and bathrobes in their possession) may have dripped are not based in fact, but merely speculation. Such speculation is insufficient to create a genuine issue of fact. There is also no testimony regarding the time that any water would require to freeze on the stairs, which would have been heated to some degree by the snow melt system even in its passive mode.  Accordingly, he cannot show that Teton Club either created or aggravated the hazard.

13.     Had their been such a new accumulation of ice in the half hour that Plaintiff was in the hot tub, there is no evidence that Teton Club had notice of the hazard, or should have had notice of it in the brief time it was there.

14.     Plaintiff also cannot show that Teton Club's operation of the snow melt system created or aggravated a dangerous condition.

15.     Plaintiff's expert, Larry Smiltneek, a mechanical engineer, submitted a report stating that melted snow from a three inch (.27 inch water equivalent) snowfall on January 4, 2017 likely melted and accumulated in a small subsidence on the landing and then overflowed onto the top stair.  The admissibility of evidence is a matter of the Court's discretion, subject to the requirements of the Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993) and its progeny.

16.     The advocate of the evidence has the burden of showing that it is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir.2009).  To be admissible, the expert must be qualified by knowledge, skill, experience, training or education to offer their opinions.  Fed. R. Evid. 702.

17.     The Court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in

48155.0009.13648733.1

issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).

18.     The Court finds that Mr. Smiltneek is a qualified engineer who may testify regarding issues within his area of expertise.  However, that expertise has limits.  There is no evidence in the materials provided to the Court which indicate that Mr. Smiltneek has any experience or training with respect to snow melt systems generally or the one installed at the Teton Club specifically.

19.     Assuming, Mr. Smiltneek is qualified to offer an opinion, his testimony will not assist the trier of fact because it is not based on a scientifically valid methodology, the methodology cannot be applied to the facts in issue, and the opinion is not based on data that a similar expert would reasonably rely upon. *See* Fed. R. Evid. 703.

20.     Mr. Smiltneek offers two general opinions (1) that the snow melt system was inadequate to melt the snow in the hot tub area, and (2) that snow which fell on January 4, 2017 would have partially melted, collected in a small subsidence on the landing, and overflowed onto the staircase on which Plaintiff fell, freezing as ice.

21.     Mr. Smiltneek's opinion that the snow melt system was incapable of melting the snow on January 4, 2017 is based on unreliable assumptions and speculation. Although he claims that conditions can vary on different sides of the Teton Club itself, his opinion relies on the assumption that conditions at the Teton Club are the same as those reported by the Jackson Hole Mountain Resort over a third of a mile away.  Although an engineer, he has disclosed no training or experience regarding meteorology to support such an opinion.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 9**

22.     His belief that the photographs taken by Mr. Caldwell on February 23, 2017 at 9:20 a.m. show snow that was deposited three days earlier is based on speculation and unsupported evidence. There is no statement by Mr. Caldwell to support this assumption. According to Mr. Smiltneek, relying on data from Jackson Hole Mountain Resort, no snow had fallen since February 20, three days before the photos were taken. However, Mr. Smiltneek has no evidence to support his claim that the conditions would be the same at the two locations.

23.     Further, the photos show that the snow has not been disturbed on handrails and walls, and there are only two sets of footprints on the stairs, which is highly unlikely to be the case at a popular ski resort in February. Testimony shows that at a minimum, the hot tubs are inspected twice a day and water samples taken. Even the skier's entrance to the resort shows no tracks of man, beast, or skier—which is extremely unlikely to be the case if three days had passed, especially at a ski resort.

24.     As such, Mr. Smiltneek's opinions which derive from his belief that the February 23 photographs represent snow that has been unmelted since February 20 are inadmissible.

25.     In addition, Mr. Smiltneek's opinion that snow from January 4, 2017, the equivalent of .27 inches of precipitation, would not have fully melted, but would have pooled in the subsidence on the landing and overflowed onto the top stair, refreezing into ice is inadmissible.

26.     In order to "assist the trier of fact to understand the evidence or to determine a fact in issue," the expert opinion must relate to the issues in the case. *Daubert*, 509 U.S. 579, 591 (1993). This is sometimes referred to as the "fit" between the opinion and the issues. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 10**

admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

27.     That is the case here. Mr. Smiltneek poured water onto the landing near the subsidence, and photographs show that a portion of the water flowed down several steps. However, the question in this case is not whether water would flow down the stairs under any circumstances, but rather whether this would occur as a result of the operation of the snow melt system. The Court holds that there is too great an analytical gap between the data and the opinion offered and the opinion that water from the snow melt system would overflow onto the stairs is not the result of a reliable methodology.

28.     Mr. Smiltneek also has not described his methodology other than to state that water was poured onto the landing, and has provided no evidence showing that his methodology is accepted by others in the field or other evidence of reliability. For this reason alone Mr. Caldwell has not met his burden of showing that the unknown methodology is reliable. There is no data as to the amount of snow that would have melted, as Mr. Smiltneek claims that only a portion would have melted. There is also no data as to the rate of snow melt, the amount that would run to the drains, or the area that would allegedly drain to the subsidence.

29.     Mr. Smiltneek's weather data shows that the snow fell over more than eleven hours, which according to him would have activated the snow melt system any time the temperature was below 40 degrees and the sensor was wet. The photographs also show that some of the water on the landing did run to the drain. Mr. Smiltneek has not made any analysis of the amount of water that would have melted at any point or correlated it with the amount of water that was poured onto the landing, or accounted for any differences between pouring water

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11**

and the gradual melting of falling snow.  Accordingly, Mr. Smiltneek's testimony is inadmissible.

30.     Although Mr. Smiltneek documents a small subsidence on the landing, because there is no evidence that water would overflow onto the stairs, Mr. Smiltneek's testimony cannot support Mr. Caldwell's argument that the subsidence created an artificial accumulation of ice that is at all relevant to the cause of his fall, which he unequivocally testified was on the stair, not the landing.  Mr. Caldwell also repeatedly differentiated between the stair and the landing in his testimony, indicating he did not consider them the same.

31.     The presence of a minor defect in the surface does not void the natural accumulation rule.  Instead, there must be a showing that the landowner allowed the "accumulation of water in a manner substantially different in volume or course than would naturally have occurred. … We wish to emphasize that the accumulation created by the owner or occupier ***must be substantially different in volume or course***. Even the most ably constructed and carefully maintained parking lot will probably contain minor indentations in which naturally occurring water can accumulate and freeze. Naturally occurring water which naturally concentrates in such a lot is still considered a natural accumulation." *Eiselein v. K-Mart, Inc.*, 868 P.2d 893, 898 (Wyo. 1994)(emphasis added).

32.     Here, there is no evidence showing the volume or course of water that may have been present in the absence of a snow melt system.  In the absence of a snow melt system or a subsidence, one would expect that the snow would either persist, be packed down in to ice, or would naturally melt and freeze in cycles throughout the winter. *See Pullman v. Outzen*, 924 P.2d 416, 418 (Wyo. 1996) (holding pedestrian packed snow and ice was not substantially more

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 12**

dangerous and still natural accumulation). There is no evidence that the conditions on January 6, 2017 were substantially more dangerous that those conditions.

33. Although the evidence suggests that the snow melt system was not infallible in its ability to remove every vestige of snow in the hot tub area, that is not the applicable standard. Instead, Mr. Caldwell must show that Teton Club had a duty to him, and its negligence was the proximate cause of his fall. He has not met this burden because there was no duty to Mr. Caldwell, who was a trespasser, or to remove a natural accumulation of ice that was open and obvious.

34. The Wyoming Supreme Court has also rejected Mr. Caldwell's claim that the Teton Club is liable because it undertook to remove the ice. Such actions do not create a duty of care, and imposing such a duty would be contrary to sound public policy. *RB, Jr. by & through Brown v. Big Horn Cty. Sch. Dist. No. 3*, 2017 WY 13, ¶ 22-23, 388 P.3d 542, 549 (Wyo. 2017). Mr. Caldwell must show that Teton Club's action made the natural condition substantially more dangerous. As in *RB*, he cannot.

35. In *RB*, the school had applied snow melt, which was also inadequate to remove all the ice. However, the Court rejected claims that applying the ice melt altered the natural accumulation rule. The Court applied similar rules from other jurisdictions, noting that "the mere sprinkling of salt [or snow melt system as here], causing the ice to melt, although it may later refreeze, does not aggravate a natural condition so as to form a basis for liability on the part of the property owner." *Id.* "[Melting] does not create a hazard, instead it only alleviates, albeit temporarily, a hazard that already existed." *Id.* As in *RB*, "while application of ice melt may have altered the condition of the ice, there is no evidence to suggest it made the condition of the ice more dangerous" and therefore Teton Club had no duty to plaintiff.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 13**

36.    This outcome is consistent with policy considerations:

> We reside in a climate where there are frequent snowstorms and
> sudden changes of temperature. Shoveling and plowing snow-
> covered walks, driveways and parking lots, and applying ice melt
> to ice-covered areas, are behaviors which should be encouraged.
> "[S]alting, shoveling, or applying deicer to a natural ice
> accumulation does not transform it into an unnatural one. To find
> otherwise would punish business owners who, as a courtesy to
> invitees, attempt to make their premises safe."

*Id.* ¶24 (internal citations omitted).

37.    Here, the facts are similar.  As a courtesy to the Teton Club owners and

their authorized guests, Teton Club installed an underground walkway snow melt system.  While

salt works to melt ice chemically, the walkway snow melt system melts ice thermally.  However,

the result is the same—the ice melts, turning into water.  The water then either runs off or

evaporates.  According to Wyoming law, the fact that water may run off and then refreeze does

not negate the natural accumulation rule.

38.    Because Plaintiff cannot prove that Teton Club owed him a duty of care,

his claims against Teton Club and Raintree necessarily fail.

39.    Plaintiff's claims against Raintree also fail because there is no evidence

that Raintree is a possessor of land.  A possessor of land owes a duty of reasonable care under all

of the circumstances. *Downen v. Sinclair Oil Corp.*, 887 P.2d 515, 518 (Wyo. 1994).  Raintree

Resorts is not the possessor, owner, or operator of the hot tub area where Plaintiff fell.  Instead, it

is merely a timeshare company, which, like 400 other owners, has a right to use the area based

on the weeks of shares it owns.  It did not control the common areas of the Teton Club, including

the hot tub area.  Teton Club is a stand alone company.  Without being an owner or being in

control of the area where Plaintiff fell, Raintree Resorts cannot be liable to Plaintiff, as it had no

duty of care.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 14**

40.     Raintree had no control over the operation of Teton Club, particularly the snow removal system or related policies.  As such, there is no basis for vicarious liability.

DATED this 31st day of March, 2021.

HAWLEY TROXELL ENNIS & HAWLEY LLP

By _____
    Julian E. Gabiola
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March, 2021, I served a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Alex Freeburg
FREEBURG LAW, LLC
235 E. Broadway Ave. Ste. 103
PO Box 3442
Jackson, WY 83001

( ) U.S. Mail, Postage Prepaid
( ) Hand Delivered
( ) Overnight Mail
( ) Facsimile
(X) CM/ECF

Julian E. Gabiola

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW - 16**