

**FILED**

*1:27 pm, 4/23/21*

**Margaret Botkins
Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

RAYMOND CALDWELL,

         Plaintiff,

vs.

                                 Case No.  20-CV-0064

TETON CLUB OWNERS ASS'N., INC,

         Defendant.

---

## ORDER ON DEFENDANT'S *DAUBERT* MOTIONS

This matter is before the Court on three *Daubert* motions filed by Defendant Teton Club Owners Ass'n., Inc. to exclude expert witnesses disclosed by Plaintiff Raymond Caldwell. CM/ECF Document (Doc.) 31, 32 & 33.  Caldwell filed a consolidated response to all motions (Doc. 35), and Teton Club filed its replies. Doc. 40, 41 & 42.  Caldwell also filed a further designation for his life care planning expert Mr. Tremp, which purportedly supplements Mr. Tremp's initial designation (Doc. 28; 28-1). Doc. 38-1.  The motions are fully briefed and ready for disposition.

### Background

This diversity case stems from a January 6, 2017 incident when Caldwell slipped on ice and allegedly suffered serious injuries after using a hot tub at Teton Club's facilities. Teton Club is a mixed-use condominium development in Teton Village, Wyoming.

Plaintiff brings claims against Teton Club of premises liability and negligence. Plaintiff alleges the ice present when he fell was an unnatural accumulation caused or contributed to by Teton Club's breach of its duty of reasonable care.

Applicable Legal Standards

When it comes to the admissibility of expert evidence, the Court maintains the role of gatekeeper. *Bitler v. A.O. Smith Corp*., 400 F.3d 1227, 1232 (10th Cir. 2005). In that role, the Court must adhere to Federal Rule of Evidence 702, which demands the assessment of "proffered expert testimony to ensure it is both relevant and reliable." *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012). To do this, "the district court generally must first determine whether the expert is qualified ...." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc). If the expert is sufficiently qualified — by knowledge, skill, experience, training, or education — then "the court must determine whether the expert's opinion is reliable …." *Id.* This requires the district court to determine whether "the reasoning and methodology underlying the [expert's] testimony is scientifically valid" and whether that "reasoning and methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 592–93 (1993).

To determine whether expert testimony is admissible requires a trial court to examine "whether the reasoning or methodology underlying the testimony is scientifically valid…." *Id*. at 592-93. In order to establish an expert's testimony as reliable, "[t]he plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the

method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Mitchell v. Gencorp Inc*., 165 F.3d 778, 784 (10th Cir. 1999).  The reliability inquiry, however, is fact- and case-specific: no one factor is dispositive or always applicable, and the goal remains "ensuring that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Bitler*, 400 F.3d at 1233 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

"Although a district court has discretion in how it performs its gatekeeping function, 'when faced with a party's objection, [the court] must adequately demonstrate by specific findings on the record that it has performed its duty as gatekeeper.'" *Avitia-Guillen*, 680 F.3d at 1257 (quoting *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 (10th Cir. 2000)). "The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible." *Nacchio*, 555 F.3d at 1241.

<u>Discussion</u>

*1.  David Kingston, Reach Hospitality*

Teton Club challenges Mr. Kingston's qualifications and the relevance and reliability of his opinions about generally accepted hospitality practices and negligence. Doc. 31, 31-1.  More specifically, Teton Club argues Mr. Kingston has no disclosed training or experience in the maintenance of a snow melt system, and the designation does not disclose how Teton Club's maintenance affected the performance of the snow melt system.  Further, Teton Club argues the opinions of negligence after the incident and

OSHA standards are irrelevant.  Finally, Teton Club argues Mr. Kingston's opinions regarding "generally accepted hospitality industry common practices" are irrelevant as Teton Club is a mixed-use condominium development and not a hospitality enterprise.

Caldwell responds that Mr. Kingston's CV shows that he has held General Manager positions and other hotel management positions and has overseen the operation and maintenance of snow removal systems, which allows him to opine that Teton Club was negligent in failing to follow the preventative maintenance recommendations of the company that installed the in-floor heating system.  Further, Caldwell argues Mr. Kingston's experience at Hotel Terra forms the basis for opining on generally accepted practices, given that Hotel Terra rents its units out short term through the property manager.

Teton Club replies that the designation does not indicate oversight of snow removal systems and that the designation still fails to support his opinion on generally accepted hospitality practices, let alone generally accepted practices which "fit" a small residence club like Teton Club.

Mr. Kingston is a consultant for the luxury hospitality industry who has worked in management at three luxury resorts in the area. Doc. 18, p. 2; 18-6.  He opines that Teton Club was "negligent in [its] duties to monitor outdoor conditions and provide safe access to and from the hot tub areas for Mr. Ray Caldwell, leading to his slip and fall injuries." Doc. 18-5, p. 1. The bases for this opinion include: 1) absence of signage; 2) failure to follow "generally accepted hospitality industry common practices" (e.g., hazard signs, meetings and inspections, corrective action after the fall); 3) failure in preventative maintenance of the snow melt system; 4) failure to document and follow-up on the fall;

and 5) lack of adequate snow melt capabilities. Doc. 18-5, pp. 2-3. The only "key skills" even remotely connected to Mr. Kingston's stated opinion are "operational leadership" and "relationship management experience." Doc. 18-6, p. 1.

The Court agrees with Teton Club and will grant this *Daubert* motion because Caldwell fails to show that Mr. Kingston's testimony is admissible.  Mr. Kingston is unqualified to testify on the operation or maintenance of Teton Club's snow melt system, and there is no objective intellectual rigor substantiating Mr. Kingston's opinions on general standards and practices of the hospitality industry.  Finally, the Court is unpersuaded that Mr. Kingston's management experience in the luxury hospitality sector actually "fits" the Teton Club scenario of a small, a mixed-use condominium development.

2.  *Larry Smiltneek, MS, PE*

Teton Club challenges Mr. Smiltneek's qualifications to give opinions about a snow melt system, as well as the reliability of opinions expressed by Mr. Smiltneek that the snow melt system was unable to adequately remove snow and ice, and that it overflowed when in operation and left ice which caused Caldwell to fall. Doc. 32, 32-1.  Teton Club argues these faulty opinions fail to support Mr. Smiltneek's ultimate conclusion that "[t]he reviewed information indicated that it is likely that the identified accident site was icy when Mr. Caldwell said he fell." Doc. 18-1, p. 8.

Caldwell responds that Mr. Smiltneek is qualified as licensed professional engineer with forensic engineering experience in mechanical systems including heaters. Doc. 35. As to the reliability of Mr. Smiltneek's opinion, it was reasonable for him to rely on

available weather data for conditions, and that his experiment showed water would collect in the visible subsidence on the landing where Caldwell slipped. *Id*.

The Court concludes that Mr. Smiltneek's qualifications as a licensed professional engineer are sufficient for his forensic analysis and conclusion. Further, there is no obvious error in his reliance on the most accurate and available weather information for the area, and any issues on this point go to weight and not admissibility. However, Teton Club will be permitted to *voir dire* Mr. Smiltneek, if requested, prior to any substantive testimony and the Court will consider any renewed motion by Teton Club at that time.

*3. Robert P. Tremp Jr., MA, CRC, CLCP*

Teton Club challenges Mr. Tremp's opinions, arguing they are not based on any physician recommendations (but "pending physician recommendation"). Doc. 33, 33-1. As such, Mr. Tremp's opinions are nothing but speculation and conjecture.

Caldwell filed an updated designation (Doc. 38-1), and responded that Mr. Tremp is qualified to estimate the cost of future medical treatment based on available medical records. Doc. 35. Caldwell further suggests the Court defer ruling on this motion until his treaters testify at trial or are deposed or supplement their records. Teton Club responds that the belated disclosure is untimely and still lacking foundation in that there is no evidence that the treatment included in the life plan is causally related to the fall. Doc. 41.

As to this motion, the Court agrees that Mr. Tremp is qualified to estimate the cost of future medical treatment. However, Mr. Tremp's opinion must be based on information a life care expert would reasonably rely upon. As to Mr. Tremp's initial designation (Doc. 28-1), physician recommendations were not available. Thus he could not reasonably rely

on unavailable recommendations.  The Court will not consider Mr. Tremp's substitute designation as solving this problem. Doc. 38-1.  Neither party can establish the schedule for his case.   The Court sets the case schedule, and a designation "subject to supplementation" does not mean that supplementation (or substitution) is automatic.  Should Mr. Tremp receive information a life care expert would reasonably rely upon (in terms of physician recommendations related to expected procedures which address medical problems caused by the fall), the appropriate procedure is for Caldwell to file a motion seeking leave of Court to submit an untimely expert designation with argument showing cause and no prejudice.  Through that procedure, all parties can be heard.

Conclusion

For the reasons expressed above, the Court grants Teton Club's *Daubert* motions as to Mr. Kingston and Mr. Tremp, and denies its *Daubert* motion as to Mr. Smiltneek.  It is thereby ORDERED:

Defendant's *Daubert* Motion to Exclude David Kingston (Doc. 31) is GRANTED;

Defendant's *Daubert* Motion to Exclude Larry Smiltneek (Doc. 32) is DENIED; and

Defendant's *Daubert* Motion to Exclude Robert Tremp (Doc. 33) is GRANTED.

Dated this 23rd day of April, 2021.

_____

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE